UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DENISE MERRILL, SECRETARY OF STATE, and DANNEL P. MALLOY, GOVERNOR, <br><br> *Defendants.* | No. 3:18-cv-01094-WWE |

### FORM 26(F) REPORT OF PARTIES' PLANNING MEETING

Date Complaint Filed:         June 28, 2018

Date Complaint Served:        July 2, 2018

Date of Defendant's Appearance:   July 16, 2018

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a telephone conference was held on August 13, 2018. The participants were Hope Metcalf, Supervising Attorney; Ashley Hall and Alden Pinkham, Law Student Interns, Rule of Law Clinic, Yale Law School, for Plaintiffs; Bradford M. Berry, National Association for the Advancement of Colored People, General Counsel, for Plaintiffs; Maura Murphy-Osborne and Michael Skold, Connecticut Office of the Attorney General, for Defendants.

**I.     Certification**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.    Jurisdiction**

    A.  <u>Subject Matter Jurisdiction</u>

Plaintiffs contend that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1357, and that this suit is authorized by 42 U.S.C. § 1983.  Defendants contest the Court's subject matter jurisdiction, and contend that the Eleventh Amendment bars this case in its entirety.  Defendants reserve the right to raise any other jurisdictional defenses that subsequent research or factual development may reveal.

    B.  <u>Personal Jurisdiction</u>

The defendants do not contest personal jurisdiction.

**III.   Brief Description of Case**

This case is a constitutional challenge to the legislative redistricting map that Connecticut adopted in 2011.  Plaintiffs allege that the populations of the map's Senate and House districts are based on total population numbers from the United States census.  Plaintiffs further allege that the census counts prisoners as residents of the town where they are incarcerated instead of the town where they resided pre-incarceration.  Plaintiffs claim that counting prisoners in that manner violates the one person, one vote principle of the Equal Protection Clause. Plaintiffs seek a declaration that Connecticut's 2011 Redistricting Plan violates the Fourteenth Amendment to

the U.S. Constitution and an injunction against the use of the 2011 Redistricting Plan in the 2020 elections.

  A. <u>Claims of Plaintiffs</u>:

Connecticut violates the "one person, one vote" requirement of the Fourteenth Amendment by engaging in unlawful "prison gerrymandering." Connecticut's state legislative redistricting plan, adopted in 2011 and scheduled for use in the 2018 and 2020 elections, counts incarcerated persons in the districts in which they are incarcerated, rather than in the districts in which they permanently reside. As a result, the 2011 state legislative redistricting plan includes multiple malapportioned districts in which the actual number of constituents (exclusive of prisoners) is more than ten percent smaller than the number of constituents in the largest district, contrary to the "one person, one vote" requirements of the Fourteenth Amendment. The "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that each person's vote shall be equal to that of his or her fellow citizens.

  Moreover, incarcerated people in Connecticut are disproportionately African-American and Latino and come from urban areas, but the State has concentrated many of its prisons in rural districts with predominantly white populations. Defendants' reliance on the incarcerated population in determining the geographic boundaries of House Districts 5, 37, 42, 52, 59, 61, 103, 106, and 108, and Senate District 7 under the 2011 Redistricting Plan impermissibly inflates the voting strength and political influence of the residents in these districts and dilutes the voting strength and political influence of Plaintiffs and other persons residing outside of these districts, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

  B. <u>Defenses and Claims of Defendants</u>:

The Eleventh Amendment bars this case in its entirety because Plaintiffs have not alleged, and cannot allege, an ongoing violation of federal law. The Supreme Court has made clear that states properly may rely on total population numbers from the United States census when designing their legislative maps. There is no dispute that Connecticut's legislative map satisfies the one person, one vote principle when measured by the census data that the legislature actually (and properly) used. To the extent that Plaintiffs ask this Court to second guess the legislature's policy judgment to use objective census data, and to dictate Plaintiffs' own preferred population counting method instead, the Court has no authority to do so. A contrary conclusion would conflict with the deference to which the legislature is entitled when making the political judgment about whether and how to include particular groups within the population base, would conflict with decades of Supreme Court precedents, and unjustifiably interfere with the historic and near-universal practice that the 50 states have adopted to count population for purposes of legislative redistricting.

Defendants reserve the right to raise any additional defenses, affirmative or otherwise, that discovery, subsequent pleading or additional research may reveal.

**IV.   Statement of Undisputed Facts**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. The Connecticut legislature, exercising authority granted by Article III of the state Constitution, appointed a Reapportionment Committee following the 2010 Census.

2. The Reapportionment Committee failed to meet its September 15, 2011 deadline to submit a redistricting plan. Pursuant to Article III of the Connecticut Constitution, Governor Malloy appointed a Reapportionment Commission on October 5, 2011.

3. On November 30, 2011, the Reapportionment Commission unanimously adopted a state legislative redistricting plan and submitted it to Defendant Merrill.

4. The state legislative redistricting plan became effective soon thereafter, upon publication by Defendant Merrill.

5. Incarcerated individuals convicted of a felony are not eligible to vote in Connecticut elections.

6. The Connecticut State House of Representatives has 151 members, and the Connecticut State Senate has 36 members, each of whom is elected by an individual district.

**V.  Case Management Plan**

    A.  <u>Standing Order on Scheduling in Civil Cases</u>

The parties request a modification of the deadlines in the Standing Order on Scheduling in Civil Cases as follows:

1. Defendants will file any motion to dismiss on or before **September 6, 2018**.

2. Plaintiffs will file their response to the motion to dismiss on or before **October 6, 2018**.

3. Defendants' reply in support of their motion to dismiss will be filed on or before **October 21, 2018**.

    B.  <u>Scheduling Conference with the Court</u>

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). If a pretrial conference is to be held, the parties prefer that a scheduling conference be conducted in person.

C. Early Settlement Conference

The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Counsel will continue to discuss settlement possibilities if and when they arise, but settlement is unlikely at this time.

The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

D. Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

Defendants have been granted an extension of time to respond to Plaintiffs' complaint, to **September 6, 2018**. The parties currently do not believe that joinder of additional parties will be required. Plaintiffs reserve the right to seek leave to amend their complaint until **August 27, 2018,** or 21 days after service of any motion to dismiss, as provided by Fed.R.Civ.P. 15, whichever is later.

E. Discovery

Defendants contend that discovery is inappropriate because this case is barred by the Eleventh Amendment, which provides a complete immunity from suit, including discovery. Defendants therefore intend to file a motion to stay all discovery until after the Court rules on their anticipated motion to dismiss. Plaintiffs will oppose the motion to dismiss as well as the motion for stay.

In the event that the Court denies the motion to dismiss or motion for the stay of discovery, the parties propose the following regarding discovery:

1. Plaintiffs anticipate that discovery will be needed on subjects including:

- Pre-incarceration addresses and racial demographics of people incarcerated in Connecticut;

- Information regarding precinct boundaries to be used in the next redistricting cycle;

- Guidance provided to the Reapportionment Committee or Reapportionment Commission for 2011 redistricting;

- Current information on any incumbent representatives who are no longer running for office and any known information on candidates who intend to run for office in the corresponding districts;

- History, if any, of State Representatives and State Senators engaging in representational activities on behalf of incarcerated persons in their district, including but not limited to personal or staff visits or correspondence with incarcerated persons, provision of constituent services to incarcerated prisons, and other such activities (if any);

- History, if any, of State Representatives and State Senators engaging in representational activities on behalf of persons who resided in the elected official's district before incarceration, yet are or were incarcerated in a different district, including but not limited to personal or staff visits or correspondence with incarcerated persons, provision of constituent services to incarcerated prisons, and other such activities (if any);

2. If discovery is necessary and appropriate, Defendants anticipate that they will require discovery regarding any and all topics related to Plaintiffs' claims that they do not have representational or electoral equality. Defendants reserve the right to seek discovery on any other topics that future pleading and research may reveal.

3. The parties disagree about what discovery deadlines should apply in this case, and have proposed the following deadlines for the Court to consider.

4. If the Court determines that discovery should not be stayed, Plaintiffs propose the following discovery scheduling deadlines:

   a. All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced immediately and completed (not propounded) by **March 1, 2019**.

   b. The parties anticipate that the plaintiffs will require a total of no more than ten depositions of fact witnesses and that the defendants will require a total of no more than ten depositions of fact witnesses. The depositions will commence by **December 1, 2018** and be completed by **March 1, 2019.**

   c. Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by **December 1, 2018**. Depositions of any such experts will be completed by **January 1, 2019**.

   d. Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by **February 1, 2019**. Depositions of such experts will be completed by **March 1, 2019**.

5.  If the Court determines that discovery should not be stayed, Defendants propose the following discovery scheduling deadlines:

   a. All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced immediately and completed (not propounded) within six months of when the Court rules on Defendants' motion to dismiss.

   b. Depositions of all fact witnesses will commence by **December 1, 2018** and be completed within six months of any ruling on Defendants' motion to dismiss. The Parties agree that they both anticipate requiring no more than ten depositions of fact witnesses.

   c. Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by no later than three months after the Court rules on Defendants' motion to dismiss. Depositions of any such experts will be completed by no later than four months after the Court rules on Defendants' motion to dismiss.

   d. Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by no later than five months after the Court rules on Defendants' motion to dismiss. Depositions of any such experts will be completed by no later than six months after the Court rules on Defendants' motion to dismiss.

6.  The parties agree that discovery will not be conducted in phases.

7.  The parties agree that they will not request permission to serve more than 25

9

interrogatories.

8.      Plaintiffs intend to call expert witnesses at trial.  Defendants may call expert witnesses at trial.

9.      Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) have discussed the disclosure and preservation of electronically stored information ("ESI"), including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of ESI, appropriate steps to preserve ESI, and the allocation of costs of assembling and producing such information.  The parties agree to the following procedures for the preservation, disclosure and management of ESI:

The parties will preserve all ESI and accept disclosure of ESI in the form(s) in which the information is ordinarily and customarily maintained in the usual course of business or, if not reasonably usable in that form, as searchable PDF documents. Electronic mail should include attachments to the email and indicate to whom the email was addressed and whether it was a reply. Upon request and if reasonably available, a party shall make diligent efforts to produce any electronically-stored spreadsheet or database in its native format (e.g, Microsoft Excel) rather than in PDF format. All electronically stored documents created by a word processing program are to be produced in the native format, if reasonably available, rather than in PDF format. To the extent any ESI is preserved only in printed form, such information may be produced in PDF format. ESI may be produced on CD-ROM. The parties will undertake to search their electronically stored records for responsive documents and information by utilizing

search terms and procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information.

10. Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties agree to the following procedures for the preservation, disclosure and management of such information:

The parties will preserve all information stored in paper or other non-electronic forms and accept disclosure of this information via courier or certified mail delivery. The parties will undertake to search their paper and non-electronic records for responsive documents and information by utilizing procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information.

11. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree that if any information that is clearly marked as being attorney-client privileged or subject to work-product protection is disclosed, or if information that obviously comprises privileged attorney-client communications or attorney work product is disclosed, the party to whom it is disclosed will notify opposing counsel and the disclosing party will have 30 days to assert the privilege and seek the return of the information. The party to whom the information is disclosed agrees not to review the information after recognizing that a privilege or work-production protection applies and further agrees to not duplicate that information or further disclose it.

    F.   <u>Dispositive Motions</u>

Plaintiffs propose that dispositive motions will be filed on or before **April 15, 2019**.

Defendants propose that dispositive motions will be filed by no later than forty-five days after the close of discovery.

G.  Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within 30 days after the entry on the ruling of the last dispositive motion. If dispositive motions are not filed, the joint trial memorandum required by the Standing Motion on Trial Memoranda in Civil Cases will be filed ninety (90) days after the completion of all discovery.

**VI.   Trial Readiness**

It is premature to identify a trial date for Plaintiffs' claims.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Respectfully submitted, this 25th day of August, 2018:

By /s/ Michael J. Wishnie            By /s/ Michael K. Skold

Ashley Hall, Law Student Intern  
Keturah James, Law Student Intern  
Alden Pinkham, Law Student Intern  
John Super, Law Student Intern  
Hope Metcalf (ct27184)  
Michael J. Wishnie (ct27221)  
Rule of Law Clinic  
Yale Law School  
127 Wall Street  
New Haven, CT 06511  
(203) 436-4780  
Michael.Wishnie@ylsclinics.org  

Michael K. Skold (ct28407)  
Maura Murphy Osborne (ct19987)  
Office of the Attorney General  
55 Elm Street  
P.O. Box 120  
Hartford, CT 06141-0120  
Tel: (860) 808-5020  
Fax: (860) 808-5347  
Email: Michael.Skold@ct.gov  

*Counsel for Defendants*

Bradford M. Berry  
National Association for the Advancement  

12

of Colored People, Inc.
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5797
bberry@naacpnet.org

*Counsel for Plaintiffs*