UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED
PEOPLE ("NAACP"), NAACP
CONNECTICUT STATE CONFERENCE,
JUSTIN FARMER, GERMANO KIMBRO,
CONLEY MONK, GARRY MONK,
DIONE ZACKERY,
   Plaintiffs,

       v.                                   3:18cv1094 (WWE)

DENISE MERRILL, Secretary
of State, et al.,
   Defendants

## RULING ON MOTION TO DISMISS

In this action, plaintiffs NAACP, NAACP Connecticut State Conference, Justin Farmer, Germano Kimbro, Conley Monk, Garry Monk and Dione Zackery bring a constitutional challenge to the legislative Redistricting Plan that Connecticut adopted in 2011; plaintiffs assert this action against the Connecticut Secretary of State and Governor. Plaintiffs seek a declaration that that the Redistricting Plan violates the Fourteenth Amendment to the United States Constitution and seek an injunction against its use in the 2020 elections. Specifically, plaintiffs allege that the legislative

1

Redistricting Plan's "unlawful prison gerrymandering" violates the principle of "one person, one vote" encompassed by the Fourteenth Amendment.

Defendants have filed a motion to dismiss for lack of jurisdiction and failure to state a claim. For the following reasons, the Court will deny the motion to dismiss.

## **FACTUAL BACKGROUND**

For purposes of ruling on this motion to dismiss, the Court assumes that the factual allegations in the complaint are true.

Plaintiff NAACP brings this action in its organizational capacity and its representative capacity on behalf of its members who are adversely affected by the unequal population of the legislative districts created by the 2011 Redistricting Plan. Plaintiff NAACP Connecticut State Conference brings this action in its representative capacity on behalf of its approximately 5,000 members, many of whom are registered voters residing in the state legislative districts affected by the Redistricting Plan's prison gerrymandering, including House Districts 88, 91, 94, 95, 96, and 97.

Plaintiff Justin Farmer is a resident of Hamden, Connecticut. He is a registered voter in Connecticut State House District 94. In 2017, he was

elected to the Hamden Legislative Council representing the Fifth District in Hamden. Plaintiff Germano Kimbro is a resident of New Haven, Connecticut. He is a registered voter in Connecticut State House District 95. Plaintiff Conley Monk is a resident of Hamden and a registered voter in Connecticut State House District 88. Plaintiff Garry Monk is a resident of New Haven and is a registered voter in Connecticut State House District 92. Plaintiff Dione Zackery is a resident of New Haven and registered voter in Connecticut State House District 97.

By Connecticut statutory law, no person is deemed to have lost his or her residence in any town by reason of that person's "absence therefrom in any institution maintained by the state," and "[n]o person who resides in any institution maintained by the state shall be admitted as an elector in the town in which such institution is located," unless that person "proves to the satisfaction of the admitting official that he is a bona fide resident of such institution." Conn. Gen. Stat. § 9-14.

Plaintiffs allege that defendants have engaged in prison gerrymandering by counting incarcerated people as residing in the state facility where they are imprisoned, rather than at their preincarceration address, for the purpose of drawing lines for state legislative districts.

3

Connecticut's prisoners are disproportionately African-American and Latino, and many prisoners maintain a permanent domicile in the state's urban centers. Many of the correctional facilities in Connecticut are located in rural or lightly populated districts with large amounts of individuals of Caucasian descent.

Prison gerrymandering coupled with the geographic concentration of prison facilities in certain rural areas results in the dilution of the votes of residents in urban voting districts that are overpopulated as compared to the districts that contain prison facilities. Thus, the individual plaintiffs, who live in overpopulated districts, have substantially less voting power than the residents of at least five State House Districts, and as many as nine House Districts, including Districts 5, 37, 42, 52, 59, 61, 103, 106, and 108 and Senate District 7.

Most Connecticut prisoners cannot vote under state law and have no contact with the representatives of the districts in which they are incarcerated. Incarcerated individuals do not visit or utilize public or private establishments in the areas where they are incarcerated.

When the incarcerated individuals are counted in their preincarcerated districts, the gerrymandered House districts containing

4

prison populations (House Districts 5, 37, 42, 52, 59, 61 103, 106, 108) have more than 10% fewer residents than House District 97, the largest House district; and Senate District 7 has more than 9% fewer residents than Senate District 26, the largest Senate district.

Thus, plaintiffs allege that the permanent residents of the prison-gerrymandered districts have more influence over local affairs and greater voting power than residents in other districts, including those districts that were home to the prisoners prior to incarceration.

Connecticut's 2011 Redistricting Plan reflects neither electoral nor representational equality.

## DISCUSSION

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical."  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).   In deciding a motion

to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss for lack of subject matter jurisdiction, the party who invokes federal jurisdiction bears the burden of proof to demonstrate the existence of subject matter jurisdiction; on a motion to dismiss for failure to make a claim, the movant bears the burden of proof. Gonzalez v. Option One Mortg. Corp., 2014 WL 2475893, at *2 (D. Conn. June 3, 2014).

Defendants maintain that plaintiffs have failed to allege that they are subjected to an ongoing violation of federal law, and therefore, this action is barred by Eleventh Amendment and should be dismissed for failure to state a claim.

The Eleventh Amendment prohibits suits against a state, its administrative agencies, and its state officials acting in their official capacities, absent the state's consent.  See Alabama v. Pugh, 438 U.S. 781, 781–782 (1978);. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  In Ex Parte Young, 209 U.S. 123, 160 (1908), the Supreme Court recognized a limited exception to Eleventh Amendment immunity for suits against state officials in their official capacities seeking prospective relief to prevent a continuing violation of federal law "because a state does not have the power to shield its officials by granting them immunity from responsibility to the supreme authority of the United States."  In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 371 (2d Cir. 2005).

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."  Wesberry v. Sanders, 376 U.S. 1, 17 (1964).   The fundamental principle of representative government in this country is one of equal representation for equal numbers of people.  Evenwel v. Abbott, 136 S. Ct. 1120, 1131 (2016).

> [A]s a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis.   Simply stated, an

> individual's right to vote for state legislators is unconstitutionally impaired when its weight is in substantial fashion diluted when compared with votes of citizens living in other parts of the state.

Reynolds v. Sims, 377 U.S. 533, 568 (1964).  In Reynolds, the Supreme Court explained:  "Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State."  Id. at 579.  States must make "an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable."  Id. at 577.

"When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review.  But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."  Gomillion v. Lightfoot, 364 U.S. 339, 347 (1960).  Thus, federal courts have jurisdiction to consider constitutional challenges to state legislative redistricting plans.  Baker v. Carr, 369 U.S. 186, 237 (1962) (allegations of denial of equal protection present justiciable cause of action).  Nevertheless, federal court review of redistricting legislation "represents a serious intrusion on the most vital of local functions," and federal courts "must be sensitive" to the states'

8

exercise of discretion and political judgment when balancing competing interests in this area.  Abbott v. Perez, 138 S. Ct. 2305, 2324 (2018).

A redistricting map "presumptively complies with the one-person, one- vote rule" if the "maximum population deviation between the largest and the small district is less than 10%" when measured by a facially neutral population baseline.  Evenwel, 136 S. Ct. at 1124.  A plaintiff bears the burden to overcome the presumption of compliance by showing that the legislature acted with "invidious intent" rather than good faith.  Perez, 138 S. Ct. at 2325.  Generally, total-population as measured by the decennial census constitutes a permissible unit for calculating population equality for drawing districts, although certain states do adjust those numbers to remove certain groups from the total-population apportionment.  Id. at 1124 n.3, & 1132.

If a redistricting plan results in a population deviation of 10% or more between the smallest and largest district, plaintiff has established a prima facie case of an equal protection violation.  Brown v. Thomson, 462 U.S. 835, 842-43 (1983).  A defendant must then show that the plan is nevertheless "an honest good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable."

Reynolds, 377 U.S. at 577.   The state must show that the "legislature's plan may reasonably be said to advance a rational state policy and, if so, whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits."   Brown, 462 U.S. at 843.

Defendants maintain that plaintiff cannot establish a prima facie case with population deviations of 10% or more based on the total population census data that were actually used for the redistricting.   Defendants assert that plaintiffs have improperly claimed to have established the prima facie case by showing population deviations of more than 10% based upon a population formula modified according to plaintiffs' "own subjective beliefs that prisoners do not receive effective representation from legislators in their districts."   Defendants argue that this "is precisely the kind of political judgment about the 'nature of representation' that this Court cannot interfere with absent a showing of intentional discrimination."

Plaintiffs counter that states are not free to define inhabitants in a manner that diminishes meaningful equal representation for its residents. Plaintiffs point out that the Supreme Court has previously recognized that total population census data should be modified when it results in

"significant population disparities" that violate the Equal Protection Clause. See Mahan v. Howell, 410 U.S. 315, 332 (1973) (holding that district court did not err in declining to accord conclusive weight to the legislative reliance on census figures). In Gaffney v. Cummings, 412 U.S. 735, 749 (1973), the Supreme Court noted that "[f]air and effective representation may be destroyed by gross population variations among districts…" and that "other relevant factors" and "important interests" may be taken into account. Gaffney elaborated:

> An unrealistic overemphasis on raw population figures, a mere nose count in the districts, may submerge these other considerations and itself furnish a ready tool for ignoring factors that in day-to-day operation are important to an acceptable representation and apportionment arrangement.

Id.

The instant case may be distinguishable from Evenwel, which held that a redistricting plan had appropriately used total population census numbers in the context of an action asserting that the Texas legislature should draw legislative districts based upon the citizen-voting-age-population. 136 S. Ct. at 1127. The Court reasoned that adopting voter-eligible apportionment would undermine "equitable and fair representation"

because representatives serve all residents, not just those eligible or registered to vote, and because nonvoters, such as children, have an important stake in the district's policy debates.  Id. at 1132.  The instant case implicates the plausible compromise of fair and effective representation due to the Redistricting Plan's reliance upon total population census data when, by state law, incarcerated individuals are not even considered residents of their prison location.  Conn. Gen. Stat. § 9-14.

Accordingly, construing all inferences of law and fact in favor of plaintiff, the Court finds that it has jurisdiction over the plausibly alleged ongoing violation of federal law.  Review of whether the Redistricting Plan violates the Equal Protection Clause is appropriate for a motion for summary judgment.  The Court will leave plaintiffs to their proof.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss [doc. #14] is DENIED.  Within 21 days of this ruling's filing date, the parties should submit a schedule relevant to discovery and dispositive motion deadlines.

Dated this 15th day of February 2019 at Bridgeport, Connecticut.

/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge