19-576-cv
*NAACP v. Merrill*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2019

(Argued: September 10, 2019   Decided: September 24, 2019)

Docket No. 19-576-cv

---

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
NAACP CONNECTICUT STATE CONFERENCE,
JUSTIN FARMER, GERMANO KIMBRO, CONLEY MONK, JR.,
GARRY MONK, DIONE ZACKERY,

*Plaintiffs-Appellees,*

- against -

DENISE MERRILL, Secretary of State, EDWARD LAMONT, JR., Governor,

*Defendants-Appellants.**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

Before:

WESLEY, CHIN, and BIANCO, *Circuit Judges*.

---

\*      The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

CERTIFIED COPY ISSUED ON 09/24/2019

Interlocutory appeal from an order of the district court (Eginton, *J.*) denying defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiffs allege that Connecticut's redistricting plan, which counts incarcerated individuals in the district in which their prison is located rather than the district in which they permanently reside, violates the "one person, one vote" principle of the Fourteenth Amendment. On appeal, defendants argue that the district court lacks jurisdiction because Eleventh Amendment immunity applies and the claim presents a nonjusticiable political question.

AFFIRMED IN PART AND REMANDED.

---

ALAA CHAKER, Law Student Intern (Michael J. Wishnie, Supervising Attorney, *on the brief*), Peter Gruber Rule of Law Clinic, Yale Law School, *for Plaintiffs-Appellees*.

ALEXANDER T. TAUBES (David N. Rosen, *on the brief*), David Rosen & Associates, P.C., New Haven, Connecticut; Benjamin D. Alter, Bradford M. Berry, National Association for the Advancement of Colored People, Inc., New York, New York, and Baltimore, Maryland, *for Plaintiffs-Appellees*.

MICHAEL K. SKOLD, Assistant Attorney General (Maura Murphy Osborne, Assistant Attorney General, *on the brief*), for William Tong, Attorney General of Connecticut, Hartford, Connecticut, *for Defendants-Appellants*.

---

PER CURIAM:

Defendants-appellants Denise Merrill and Edward Lamont, Jr., in their official capacities as the Secretary of State and Governor of Connecticut, respectively (together, "Defendants"),[1] appeal the February 15, 2019 order of the district court (Eginton, *J.*) denying their motion to dismiss for lack of jurisdiction and for failure to state a claim. Plaintiffs-appellees the National Association for the Advancement of Colored People (the "NAACP"), its Connecticut Conference, and five individuals filed a complaint (the "Complaint") on June 28, 2018, challenging Connecticut's 2011 redistricting plan (the "Redistricting Plan").

The Complaint alleges that the Redistricting Plan violates the Fourteenth Amendment's principle of "one person, one vote." The Redistricting Plan counts incarcerated individuals in the district in which their prison is located (their "prison district"), rather than the district in which they permanently reside (their "home district"). This is despite the fact that under Connecticut law, most incarcerated individuals do not have the right to vote, and those who can vote may do so only in their home district, rather than in their prison district. *See* Conn. Gen. Stat. §§ 9-46, 9-14. Moreover, Plaintiffs contend,

---

[1] Plaintiffs sued then-Governor Daniel P. Malloy. Malloy was succeeded as Governor of Connecticut by Lamont in January 2019.

3

prisoners typically have no contact with their prison district's elected officials, cannot patronize public or private establishments in their prison district, and cannot drive on their prison district's roads or send their children to their prison district's schools. Hence, according to the Complaint, the Redistricting Plan artificially inflates the representation of some parts of the state at the expense of others: the representational power of the predominantly White residents living in the prisoners' mostly rural prison districts is artificially inflated, while the representational power of the predominantly Black and Latino residents living in prisoners' more urban home districts is artificially deflated.

On September 6, 2018, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that its allegations of an ongoing violation of federal law are frivolous or insubstantial and, thus, that Eleventh Amendment immunity applies. Defendants also moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. On February 15, 2019, the district court denied both prongs of the motion to dismiss, holding that Defendants were not immune from suit under the Eleventh Amendment because the Complaint plausibly alleged an ongoing violation of federal law that falls within the *Ex parte Young* exception to

4

the Eleventh Amendment's bar on suits against states and their officials. *See Ex parte Young*, 209 U.S. 123 (1908). This appeal followed.

## DISCUSSION

I.  *Appellate Jurisdiction*

Although the parties appear to agree that we have appellate jurisdiction, we are obliged to raise the issue of our jurisdiction *nostra sponte* "when it is questionable." *Henrietta D. v. Giuliani*, 246 F.3d 176, 179 (2d Cir. 2001). We conclude that we have jurisdiction over this appeal. Under the collateral order doctrine, we have jurisdiction to hear immediate appeals of nonfinal orders denying Eleventh Amendment immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-46 (1993). Defendants appeal the district court's order only to the extent it "deni[ed] Defendants' Eleventh Amendment immunity defense." App. at 47.

This straightforward conclusion is complicated somewhat by the fact that this case involves a challenge to the constitutionality of the apportionment of a statewide legislative body, which must be heard by a three-judge district court. 28 U.S.C. § 2284(b)(3). "[T]he three-judge requirement in 28 U.S.C. § 2284 is jurisdictional," *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008), and thus "the district judge [is] *required* to refer the case to a three-judge court"

5

where the statutory requirements are met, *Shapiro v. McManus*, 136 S. Ct. 450, 454 (2015). Before convening a three-judge court, "all the district judge must determine is whether the request for three judges is made in a case covered by § 2284(a) -- no more, no less." *Id.* (internal quotation marks omitted). But a "three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." *Id.* (internal quotation marks omitted). Hence, a complaint must satisfy two criteria before it must be referred to a three-judge court: (1) it commences an action "challenging the constitutionality of . . . the apportionment of any statewide legislative body," 28 U.S.C. § 2284(a), and (2) it is justiciable and otherwise confers subject matter jurisdiction on the federal courts, *Shapiro*, 136 S. Ct. at 455. As part of this second inquiry, a single judge may review whether a claim presents a "substantial federal question" that is justiciable. *Id.*

It follows that a single district judge is empowered to determine whether the Eleventh Amendment bars a claim that would otherwise fall within § 2284(a). By its terms, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI. Thus, the Eleventh Amendment "goes to the

6

jurisdiction of the federal court, as opposed to the underlying liability of the State or state entity." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 150 (Stevens, J., dissenting); *see also id.* at 144 (majority opinion) (noting that the Eleventh Amendment is a "withdrawal of jurisdiction"). Accordingly, the district court had jurisdiction to determine that the Complaint satisfied the requirements of *Ex parte Young*, and we have jurisdiction to review that determination on appeal.

II. *Eleventh Amendment Immunity*

　　A. *Standard of Review*

We review a district court's legal conclusion that state officials are not immune from suit under the Eleventh Amendment *de novo*. *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94 (2d Cir. 2002). When we "review[] the legal merits of a claim for purposes of *Ex parte Young*, [we] review[] only whether a violation of federal law is *alleged*; appellate review of allegations is necessarily deferential, and only frivolous and insubstantial claims will not survive its scrutiny." *In re Deposit Ins. Agency*, 482 F.3d 612, 623 (2d Cir. 2007).

　　B. *Applicable Law*

The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception. *Id.* at 617. The *Ex parte Young*

7

doctrine "operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of [the] law." *Id.* at 618 (internal quotation marks omitted). A plaintiff may invoke this exception "provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Id.* (internal quotation marks omitted). The first requirement is satisfied if the claim of an ongoing violation of federal law is "neither insubstantial nor frivolous." *Id.* A claim is "insubstantial" for purposes of rejecting federal jurisdiction if it is "implausible, foreclosed by prior decisions of the Supreme Court, or otherwise completely devoid of merit." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 133 (2d Cir. 2010) (alterations omitted). It follows that a claim is not "'insubstantial' merely because it might ultimately be unsuccessful on its merits." *Id.* The second requirement is satisfied if the relief sought is prospective -- that is, it is not "retrospective or designed to compensate for a past violation of federal law." *In re Deposit Ins.*, 482 F.3d at 619.

### C. *Application*

Application of the *Ex parte Young* inquiry demonstrates that the Eleventh Amendment does not immunize Defendants from this suit. As to the first requirement, Plaintiffs have sued Connecticut's Governor and Secretary of

State in their official capacities, and they allege a violation of the Constitution, namely that the Redistricting Plan violates the Fourteenth Amendment and will continue to do so as long as it remains in place. As to the second requirement, Plaintiffs have requested only prospective relief: a declaratory judgment and an injunction requiring Defendants to adopt a new districting plan for future elections.

Defendants do not dispute that the relief sought is prospective; rather, they contend that the allegations are insubstantial. They make three principal arguments, which we discuss in turn.

### 1. Evenwel v. Abbott

The Supreme Court has long held that "the Equal Protection Clause requires that seats in both houses of a bicameral state legislature must be apportioned on a population basis," which means that a state must make "an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable." *Reynolds v. Sims*, 377 U.S. 533, 568, 577 (1964). Because "some deviations from population equality may be necessary to permit the States to pursue other legitimate objectives[,] . . . 'minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth

9

Amendment so as to require justification by the State.'" *Brown v. Thompson*, 462 U.S. 835, 842 (1983) (quoting *Reynolds*, 377 U.S. at 745).

Based on these considerations, the Court has established that "*as a general matter, . . .* an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations." *Id.* (emphasis added); *accord Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016). Thus, a plan with a population deviation greater than 10% "creates a prima facie case of discrimination and therefore must be justified by the State," *Brown*, 462 U.S. at 482-83, while a population deviation below 10% is "insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State," *Gaffney v. Cummings*, 412 U.S. 735, 745 (1973). Where the 10% threshold is not met, "apportionment schemes . . . will constitute an invidious discrimination only if it can be shown that designedly or otherwise, a multi-member constituency apportionment scheme, *under the circumstances of a particular case*, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population." *Burns v. Richardson*, 384 U.S. 73, 88 (1966) (emphasis added and internal quotation marks omitted).

10

In *Evenwel v. Abbott*, the Supreme Court rejected the argument that the Constitution requires that state voting districts be drawn to have equal voter-eligible populations. 136 S. Ct. at 1132. The Court instead held that, based on "constitutional history, [the Supreme] Court's decisions, and longstanding practice, . . . a State may draw its legislative districts based on total population," including from raw Census data, without running afoul of the "one person, one vote" principle. *Id.* at 1123.

Defendants argue that *Evenwel* and its predecessors foreclose Plaintiffs' claim. According to Defendants, the Redistricting Plan is based on total population from the 2010 decennial Census and the population deviation between the largest and smallest district is under 10%. As an evidentiary matter, then, the Redistricting Plan "presumptively complies" with the "one person, one vote" principle. *See id.* at 1124. But Defendants confuse the requirements of a prima facie showing of discrimination with a pleading requirement to invoke federal jurisdiction.

A "prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Consequently, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *id.* at 511, because "the precise requirements of a

11

prima facie case can vary depending on . . . context," and "it may be difficult to define the precise formulation of the required prima facie case in a particular case" before "discovery has unearthed relevant facts and evidence," *id.* at 512. The Supreme Court has never held that a prima facie showing of discrimination is *required* at the pleading stage of a case alleging discriminatory districting at the state level to invoke the jurisdiction of the federal courts. *See Wright v. North Carolina*, 787 F.3d 256, 267-69 (4th Cir. 2015) (reversing dismissal of state apportionment claim where maximum population deviation was below 10% because plaintiffs alleged that districting plan had effect of discriminating against urban voters in favor of rural voters). In other words, the 10% threshold is not a safe harbor. On "review[ing] the legal merits of a claim for purposes of *Ex parte Young*, [we] review[] only whether a violation of federal law is *alleged*." *In re Deposit Ins. Agency*, 482 F.3d at 623. Here, plaintiffs have alleged an ongoing constitutional violation.

    2.    **Abbott v. Perez**

Defendants contend that federal courts are prohibited from interfering with a state legislature's choice about how to count prisoners in the population base. In *Burns v. Richardson*, the Supreme Court held that state redistricting is a judgment "exclusively for the legislature to make." 384 U.S. at

12

89. In *Abbott v. Perez*, the Court clarified that redistricting is "primarily the duty and responsibility of the state" and that "federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." 138 S. Ct. 2305, 2324 (2018) (internal quotation marks and alterations omitted).

These cases do not foreclose Plaintiffs' claim. As *Burns* held, redistricting decisions are "subject to constitutional challenge . . . upon a demonstration that the . . . apportionment . . . would operate to minimize or cancel out the voting strength of racial or political elements of the voting population." *Burns*, 384 U.S. at 89 (internal quotation marks omitted). Plaintiffs here have alleged that the Redistricting Plan will operate to minimize representational strength in prisoners' urban home districts, which they allege are predominantly Black and Latino, in favor of the predominantly White rural prison districts. Thus, Plaintiffs' claim is not foreclosed on this basis.

### 3. Davidson v. City of Cranston

Defendants argue that *Davidson v. City of Cranston*, which involved facts that Defendants contend are substantially similar to those presented here, demonstrates that Plaintiffs' claim is insubstantial. 837 F.3d 135 (1st Cir. 2016). A decision of the First Circuit, while potentially a persuasive authority as to the merits of the case, is not "a prior decision of the Supreme Court" that

13

"foreclose[s]" Plaintiffs' claim at this stage. *S. New England Tel. Co.*, 624 F.3d at 133 (alterations omitted).[2]

In sum, Plaintiffs' claim seeking prospective relief from a purportedly ongoing constitutional violation falls within the *Ex parte Young* doctrine. The claim is neither frivolous nor insubstantial. The district court thus has subject matter jurisdiction over the claim. "Perhaps [Plaintiffs] will ultimately fail on the merits of their suit, but § 2284 entitles them to make their case before a three-judge district court." *Shapiro*, 136 S. Ct. at 456. Accordingly, we affirm the order of the district court to the extent it denies Defendants' motion to dismiss the Complaint for lack of jurisdiction. We again emphasize that we do not take any position on the ultimate merits of the case and nothing in this opinion shall be construed to indicate otherwise.

---

[2]    As discussed above, Defendants rely heavily on *Evenwel* in arguing that they are entitled to Eleventh Amendment immunity. We note, however, that there are differences at least arguably sufficient to distinguish the claims in this case from those in *Evenwel*. Indeed, in *Davidson*, which Defendants characterize as "an identical prisoner-based claim," Appellants' Br. at 4, the First Circuit noted that "*Evenwel* did not decide the precise question before us," *Davidson*, 837 F.3d at 141. At this extraordinarily preliminary juncture, we need not determine whether *Evenwel* will ultimately decide the merits of this case and take no position on that issue.

14

### III. *Justiciability*

Defendants argue that because the Redistricting Plan does not allege a prima facie violation of the "one person, one vote" principle, Plaintiffs' claim presents a nonjusticiable political question about the meaning of fair and equitable representation. We disagree.

Plaintiffs allege that the Redistricting Plan operates to minimize the voting strength of the predominantly Black and Latino constituents living in prisoners' home districts and to increase the voting strength of the predominantly White constituents living in prisoners' prison districts. Such a claim is justiciable. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2496 (2019) (reaffirming that "claim[s] of population inequality among districts" are justiciable because they can "be decided under basic equal protection principles" (citing *Baker v. Carr*, 369 U.S. 186, 226 (1962))). The Court's holding in *Rucho* that partisan gerrymandering claims are not justiciable, *id.* at 2500, therefore does not preclude Plaintiffs' claim.

### IV. *Failure to State a Claim*

Although we are without jurisdiction to correct the error, we are obliged to note that the district court lacked jurisdiction to decide Defendants' motion to dismiss for failure to state a claim and that it should have referred that

15

aspect of the case to a three-judge district court. *See Idlewild Bon Voyage Corp. v. Epstein*, 370 U.S. 713, 715 (1962) (per curiam) (noting that although courts of appeals are "precluded from reviewing on the merits of a case which should have originally been determined by a court of three judges," they are not "powerless ever to give any guidance when a single judge has erroneously invaded the province of a three-judge court").

The Supreme Court has made explicit that a single judge is *required* to refer a case to a three-judge court, regardless of whether an application by the parties is made, as soon as it is determined that the claim falls within § 2284(a) and that jurisdiction in federal court is proper. *See Shapiro*, 136 S. Ct. at 454-55. This is so because, as noted above, § 2284(a) is jurisdictional and a single judge has no power over a case that falls within § 2284(a) other than to refer the case to a three-judge panel. *See id.*; *Idlewild Bon Voyage Corp.*, 370 U.S. at 715 (noting that where statute requires a three-judge district court to be empaneled, "the applicable jurisdictional statute . . . made it impermissible for a single judge to decide the merits of the case, either by granting or withholding relief").

Moreover, the Supreme Court has held that a ruling on a motion to dismiss for failure to state a claim goes beyond a mere assessment of whether a complaint pleads a jurisdiction-conferring claim. In *Shapiro*, plaintiffs challenged

16

the constitutionality of the apportionment of congressional districts. 136 S. Ct. at 453. The "District Judge dismissed petitioners' complaint not because he thought he lacked jurisdiction, but because he concluded that the allegations failed to state a claim for relief on the merits." *Id.* at 455. But as the Court noted, "[w]e have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits." *Id.; see also S. New England Tel. Co.*, 624 F.3d at 132 ("[W]hether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits."). The Court reversed the judgment and remanded the case after concluding that the complaint raised a substantial federal question. *Shapiro*, 136 S. Ct. at 456. On remand, the case was promptly referred to a three-judge district court. *Benisek v. Lamone*, No. 13-cv-3233 (D. Md. Feb. 4, 2016), Dkt. No. 39.

While the district court here did not discuss the Rule 12(b)(6) prong of Defendants' motion to dismiss at length, it expressly denied the motion to dismiss for failure to state a claim, ruled that the Complaint "*plausibly* alleged [an] ongoing violation of federal law," and concluded that "whether the Redistricting Plan violates the Equal Protection Clause is appropriate for summary judgment." App. at 46 (emphasis added); *see also id.* at 36. In doing so,

17

the district court went beyond deciding that the Complaint raised a jurisdiction-conferring claim.

## CONCLUSION

Accordingly, we **AFFIRM IN PART** the order of the district court, to the extent it held that the Eleventh Amendment bar on suits against states does not apply to Plaintiffs' claim and denied Defendants' motion to dismiss for lack of jurisdiction. To the extent the district court denied Defendants' motion to dismiss for failure to state a claim, the district court lacked jurisdiction to do so. We **REMAND** the case to the district court. Because this case falls within § 2284(a) and Plaintiffs' claim presents a substantial federal question, on remand the district court shall refer the matter to a three-judge court for further proceedings.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

18