UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NAACP, *et al.*, | No. 3:18-cv-01094-JBA-PWH-JMW |
| *Plaintiffs,* | |
| v. | |
| DENISE MERRILL, SECRETARY OF THE STATE, and EDWARD LAMONT, JR., GOVERNOR, | November 8, 2019 |
| *Defendants*. | |

**SUPPLEMENTAL REPORT OF PARTIES' RULE 26(f) PLANNING MEETING**

**Date Complaint Filed:**           June 28, 2018
**Date Complaint Served:**          July 2, 2018
**Date of Defendant's Appearance:** July 16, 2018
**Date Amended Complaint Filed:**   October 15, 2019

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, on August 13, 2018 the parties conferred to develop a discovery plan, which they reported to the Court on August 25, 2018. ECF No. 13. On November 5, 2018, the Court stayed discovery pending disposition of Defendants' motion to dismiss. ECF No. 26. On February 15, 2019, the Court denied that motion to dismiss and directed the parties to submit an updated discovery and dispositive motions schedule on or before March 8, 2019. ECF No. 27. The parties submitted a supplemental Rule 26(f) report on March 8, 2019, ECF No. 31, but discovery was stayed pending disposition of Defendants' interlocutory appeal. On remand, and as directed by this Court at a teleconference held October 8, 2019, ECF No. 54, the parties submit this second supplemental 26(f) Planning Report.

1

**I.      Certification**

Undersigned counsel, after consultation with their clients, certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.     Jurisdiction**

A. Subject Matter Jurisdiction

Plaintiffs contend that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1357, and that this suit is authorized by 42 U.S.C. § 1983. The Second Circuit held that this Court has subject matter jurisdiction over this action and that the Eleventh Amendment does not bar this case. ECF No. 50. The Second Circuit's ruling notwithstanding, Defendants maintain that the Court lacks subject matter jurisdiction over Plaintiffs' claims to the extent they are based on Plaintiffs' assertion that prisoners do not receive fair, effective or equitable representation in the districts where they are incarcerated.

B. Personal Jurisdiction

Personal jurisdiction is not contested.

**III.    Brief Description of Case**

This case is a constitutional challenge to the legislative redistricting map that Connecticut adopted in 2011, which Plaintiffs allege violates the "one person, one vote" principle of the Equal Protection Clause by counting prisoners where they are incarcerated rather than at their permanent address. Plaintiffs also challenge any potential reliance on a substantially similar counting method for prisoners in the 2021 redistricting process.

Plaintiffs allege that the populations of the 2011 map's Senate and House districts are based on total population numbers from the United States census. Plaintiffs further allege that the census counts incarcerated persons as residents of the town where they are incarcerated instead of the town where they resided pre-incarceration. Plaintiffs claim that counting incarcerated persons in that manner violates the "one person, one vote" principle of the Equal Protection Clause. Plaintiffs seek a declaration that Connecticut's 2011 Redistricting Plan violates the Fourteenth Amendment to the U.S. Constitution and an injunction against the use of the 2011 Redistricting Plan in the 2020 elections. Plaintiffs additionally seek a declaration that any adoption of a substantially similar Redistricting Plan in 2021 that counts prisoners in the district where they are incarcerated and results in a wrongful population deviation would be unconstitutional.

A. Claims of Plaintiffs

Connecticut violates the "one person, one vote" requirement of the Fourteenth Amendment by engaging in unlawful "prison gerrymandering." Connecticut's state legislative redistricting plan, adopted in 2011 and scheduled for use in the 2020 elections, counts incarcerated persons in the districts in which they are incarcerated, rather than in the districts in which they permanently reside. This is in contradiction to Connecticut law, which states that "[n]o person shall be deemed to have lost his residence in any town by reason of his absence therefrom in any institution maintained by the state." CONN. GEN. STAT. § 9-14 (2019).

As a result, the 2011 state legislative redistricting plan includes multiple malapportioned districts in which the actual number of constituents (exclusive of incarcerated persons) is more than ten percent smaller than the number of constituents in the largest district, contrary to the "one person, one vote" requirements of the Fourteenth Amendment. The "one person, one vote"

3

principle of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that each person's vote shall be equal to that of his or her fellow citizens. Moreover, incarcerated people in Connecticut are disproportionately African-American and Latino and come from urban areas, but the State has concentrated many of its prisons in rural districts with predominantly white populations. Defendants' reliance on the incarcerated population in determining the geographic boundaries of House Districts 5, 37, 42, 52, 59, 61, 103, 106, and 108, and Senate District 7 under the 2011 Redistricting Plan impermissibly inflates the voting strength and political influence of the residents in these districts and dilutes the voting strength and political influence of Plaintiffs and other persons residing outside of these districts, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. This practice has racially disproportionate impacts in districts with less than 10 percent deviation and operates to minimize the voting strength of the African American and Latino communities from which incarcerated people disproportionately come.

B. Defenses and Claims of Defendants

Connecticut's 2011 Redistricting Plan is constitutional and counts incarcerated residents appropriately in the location where they live and sleep each day. For this reason and others, the Amended Complaint fails to state a claim upon which relief can be granted. Even if the Amended Complaint states a claim, moreover, there is no evidence to support Plaintiffs' claims. Finally, to the extent that Plaintiffs' claims depend on their assertion that prisoners do not receive fair, effective or equitable representation from legislators in the districts where they are incarcerated, that specific claim is nonjusticiable, and the Court therefore lacks jurisdiction to decide any claim that depends on such a theory. Defendants reserve the right to raise any

additional defenses, affirmative or otherwise, that discovery, subsequent pleading or additional research may reveal.

**IV.      Statement of Undisputed Facts**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

1.      The Connecticut legislature, exercising authority granted by Article III of the state Constitution, appointed a Reapportionment Committee following the 2010 Census.

2.      The Reapportionment Committee failed to meet its September 15, 2011 deadline to submit a redistricting plan. Pursuant to Article III of the Connecticut Constitution, then-Governor Malloy appointed a Reapportionment Commission on October 5, 2011.

3.      On November 30, 2011, the Reapportionment Commission unanimously adopted a state legislative redistricting plan and submitted it to Defendant Merrill.

4.      The state legislative redistricting plan became effective soon thereafter, upon publication by Defendant Merrill.

5.      Incarcerated persons convicted of a felony are not eligible to vote in Connecticut elections.

6.      The Connecticut State House of Representatives has 151 members, and the Connecticut State Senate has 36 members, each of whom is elected by an individual district.

7. The Secretary of the State of Connecticut may begin issuing nominating petition forms for offices to be contested at the regular election as soon as January 2, 2020. CONN. GEN. STAT. § 9-453b (2019).

8. Defendant Merrill may issue primary petitions for candidates for statewide and Representative in Congress offices on April 28, 2020. *See generally* SEC. OF THE STATE, NOV. 3, 2020 STATE ELECTION CALENDAR (2019), available as the "2020 Key Dates Calendar" at https://portal.ct.gov/SOTS/Common-Elements/V5-Template---Redesign/Elections--Voting--Home-Page (last viewed Nov. 6, 2019).

9. May 26, 2020, is the last date on which political parties can hold nominating conventions for Connecticut statewide and district offices. CONN. GEN. STAT. § 9-383 (2019).

10. June 9, 2020, is the last date that candidates can file a primary petition with the Secretary of the State to participate in a primary for nomination by a political party for Connecticut statewide or district office. Fourteen days after the close of the state or district convention is the last day that candidates can file a certificate of 15% of the delegate vote with the Secretary of the State so that they can participate in a primary for nomination by a political party for Connecticut statewide or district office. CONN. GEN. STAT. § 9-400 (2019).

11. On August 11, 2020, the primaries for parties for nomination for Connecticut statewide offices will be held. CONN. GEN. STAT. § 9-423(a) (2019).

12. On November 3, 2020, the general election for Connecticut statewide offices will be held. CONN. CONST. art. III, § 8.

**V.      Case Management Plan**

      A.      Scheduling Conferences

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). If a conference is held, the parties prefer that the conference be conducted in person.

      B.      Early Settlement Conference

The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Counsel will continue to discuss settlement possibilities if and when they arise, but settlement is unlikely at this time. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

      C.      Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

The parties currently do not believe that joinder of additional parties will be required.

      D.      Pretrial Motions

The parties propose that Defendants may file a motion to dismiss, that Plaintiffs will not file a motion for preliminary injunction, and that the parties will file cross motions for summary judgment addressing all claims in the case, which may include any jurisdictional defenses that Defendants could have raised in a motion to dismiss. The parties propose the following briefing schedule:

          1.      Defendants' motion to dismiss, if any, will be due by December 1, 2019. Plaintiffs' opposition, if any, will be due by January 1, 2020.

        Defendants' reply, if any, will be due by January 15, 2020. The Court will schedule oral argument on Defendants' motion to dismiss, if any, at its earliest convenience.

2. Plaintiffs' motion for summary judgment will be due by March 31, 2020.

3. Defendants' combined opposition to Plaintiffs' motion for summary judgment and cross motion for summary judgment will be due by April 30, 2020.

4. Plaintiffs' combined reply in support of their own motion for summary judgment and opposition to Defendants' motion for summary judgment will be due by May 15, 2020.

5. Defendants' reply in support of their own motion for summary judgment will be due by May 31, 2020.

6. The Court will schedule oral argument on the parties' cross motions for summary judgment at its convenience.

E. <u>Discovery</u>

The parties propose the following regarding discovery:

1. Plaintiffs anticipate that discovery will be needed on subjects including:

   a) Pre-incarceration addresses, anticipated incarceration length, and racial demographics of people incarcerated in Connecticut;

   b) Post-incarceration addresses, incarceration length, and other voting-related data of persons formerly incarcerated in Connecticut no longer incarcerated;

8

   c) Information regarding precinct boundaries to be used in the next redistricting cycle;

   d) Guidance provided to the Reapportionment Committee or Reapportionment Commission for 2011 redistricting;

   e) Data, documents, and other resources used by the Reapportionment Committee or Reapportionment Commission for 2011 redistricting;

   f) History, if any, of State Representatives and State Senators engaging in representational activities on behalf of incarcerated persons in their district, including but not limited to personal or staff visits or correspondence with incarcerated persons, provision of constituent services to incarcerated prisons, and other such activities (if any);

   g) History, if any, of State Representatives and State Senators engaging in representational activities on behalf of persons who resided in the elected official's district before incarceration, yet are, or were, incarcerated in a different district; including but not limited to personal or staff visits or correspondence with incarcerated persons, provision of constituent services to incarcerated prisons, and other such activities (if any).

2. Defendants anticipate that they will require discovery regarding any and all topics related to Plaintiffs' substantive claims, including but not limited to Plaintiffs' claim that they do not have representational or electoral equality and that their voting and representational strength has been diluted. Defendants reserve the right to seek discovery on any other topics that subsequent research or factual development may reveal. Defendants also reserve the right to assert privileges to discovery where

appropriate, including but not limited to legislative process privileges and deliberative process privileges.

3. The parties propose the following discovery scheduling deadlines:

   a) All discovery, including depositions of expert witnesses pursuant to Fed R. Civ. P. 26(b)(4), will be commenced immediately and completed by **March 1, 2020.**

   b) Defendants' initial disclosures will be due by **November 23, 2019**.

   c) Defendants will provide any responses and objections to Plaintiffs' first set of discovery requests dated September 18, 2018, by **December 5, 2019**.

   d) The parties anticipate that they will not require more than ten depositions of fact witnesses on each side.

   e) Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by **January 1, 2020**. Depositions of any such experts will be completed by **March 1, 2020**.

   f) Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by **February 1, 2020**. Depositions of such experts will be completed by **March 1, 2020**.

   g) Plaintiffs will provide Defendants with a list of declarants they intend to offer in support of their motion for summary judgment by **January 15, 2020**, with a short proffer of the subject matter that each individual will testify about. Defendants may depose each person identified as a declarant by the close of discovery.

    h) Defendants will provide Plaintiffs with a list of declarants they intend to offer in support of their motion for summary judgment by **February 15, 2020**, with a short proffer of the subject matter that each individual will testify about. Plaintiffs may depose each person identified as a declarant by the close of discovery.

4. The parties agree that discovery will not be conducted in phases.

5. The parties may serve more than 25 interrogatories.

6. Plaintiffs intend to call one or more expert witnesses at trial. Defendants may call expert witnesses at trial.

7. Undersigned counsel (after consultation with their respective clients) concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved, have discussed the disclosure and preservation of electronically stored information ("ESI"), including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the retrieval and production of such information, the location and format of ESI, appropriate steps to preserve ESI, and the allocation of costs of assembling and producing such information. The parties agree to the following procedures for the preservation, disclosure and management of ESI:

    The parties will preserve all ESI and accept disclosure of ESI in the form(s) in which the information is ordinarily and customarily maintained in the usual course of business or, if not reasonably usable in that form, as searchable PDF documents. Electronic mail should include attachments to the email and indicate

11

      to whom the email was addressed and whether it was a reply. Upon request and if reasonably available, a party shall make diligent efforts to produce any electronically-stored spreadsheet or database in its native format (*e.g.* Microsoft Excel) rather than in PDF format. All electronically stored documents created by a word processing program are to be produced in the native format, if reasonably available, rather than in PDF format. To the extent any ESI is preserved only in printed form, such information may be produced in PDF format. ESI may be produced on CD-ROM. The parties will undertake to search their electronically stored records for responsive documents and information by utilizing search terms and procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information.

8. Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties agree to the following procedures for the preservation, disclosure and management of such information:

      The parties will preserve all information stored in paper or other non-electronic forms and accept disclosure of this information via courier or certified mail delivery. The parties will undertake to search their paper and non-electronic records for responsive documents and information by utilizing procedures known by the disclosing party to be reasonably calculated to locate responsive documents and information.

9. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production:

> If any information that is clearly marked as being attorney-client privileged or subject to work-product protection is disclosed, or if information that obviously comprises privileged attorney-client communications or attorney work product is disclosed, the party to whom it is disclosed will notify opposing counsel and the disclosing party will have 30 days to assert the privilege and seek the return of the information. The party to whom the information is disclosed agrees not to review the information after recognizing that a privilege or work-production protection applies and further agrees to not duplicate that information or further disclose it.

F.  <u>Dispositive Motions</u>

Dispositive motions will be filed in accordance with the briefing schedule set forth above.

G.  <u>Joint Trial Memorandum</u>

If necessary, the joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within forty-five (45) days after the Court rules on the parties' cross motions for summary judgment.

**VI.   Trial Readiness**

The case will be ready for trial within thirty (30) days of the parties' submission of the Joint Trial Memorandum.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Respectfully submitted this 8th of November, 2019.

By /s/ Michael J. Wishnie
Nicole Billington, Law Student Intern
Doni Bloomfield, Law Student Intern
Alexander Boudreau, Law Student Intern
Alaa Chaker, Law Student Intern
Brandon DeBot, Law Student Intern
Ayoub Ouederni, Law Student Intern
Mary Ella Simmons, Law Student Intern
Hope Metcalf (ct27184)
Michael J. Wishnie (ct27221)
Peter Gruber Rule of Law Clinic
Yale Law School[**]
127 Wall Street
New Haven, CT 06520
Tel: (203) 436-4780
Email: Michael.Wishnie@yale.edu

*Counsel for Plaintiffs*

By /s/ Michael K. Skold
Michael K. Skold (ct28407)
Maura Murphy Osborne (ct19987)
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Email: Michael.Skold@ct.gov
Email: Maura.murphyosborne@ct.gov

*Counsel for Defendants*

Bradford M. Berry[***]
National Association for the Advancement of Colored People, Inc.
Office of the General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5797
Email: Bberry@naacpnet.org

David N. Rosen (ct00196)
Alexander T. Taubes (ct30100)
David Rosen & Associates, P.C.
400 Orange Street
New Haven, CT 06511
Tel: (203) 787-3513
Email: Drosen@davidrosenlaw.com

---

[**] This filing does not purport to state the views of Yale Law School, if any.
[***] Motion for *pro hac vice* forthcoming.